FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

IN RE TODD JAMES OLIVER, )
dba T. James Construction, dba ) Case No. 22-20811-C-7
James Built Construction Inc., )
                                          ) DCN No. PGM-1
                            Debtor.       )
_____

**OPINION**

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

    In this case of early impression, the debtor's motion for an order compelling abandonment of an exempt homestead on the theory of inconsequential value and benefit to the estate under 11 U.S.C. § 554(b) is denied as premature on account of § 522(q).

    The value and benefit to the estate remains uncertain because § 522(q)(1)(B)(ii) could limit the claimed $626,400 exemption to $189,050 if pending adversary proceedings alleging fraud and fiduciary fraud establish there is debt arising from "fraud, deceit, or manipulation in a fiduciary capacity."

    Depending on the outcome of that open question of law, the trustee might have more than $250,000 available to pay claims if the § 522(q) cap, which was dormant in California until the state increased its homestead exemption in 2021, applies.

    As the time for any "party in interest" to object to exemptions under § 522(q) does not, per Federal Rule of Bankruptcy Procedure 4003(b)(3), expire until the case is closed, abandonment will be under § 554(c) incident to case closure.

    The motion to compel abandonment under § 554(b) is DENIED.

## Facts

Chapter 7 debtor Todd Oliver elected to exempt his residence in Soda Springs, Placer County, California, for $626,400 under new California exemptions effective in 2021.[1]

He valued the property at $825,000, subject to consensual liens of $379,155 and to two judgment liens totaling $134,339.

In lien avoidance proceedings under § 522(f), the judgment lienors were given time to gather evidence probative of whether the property is his residence and its value exceeded the $1,005,555 apparently needed to preserve a judgment lien. When such evidence was not forthcoming, the liens were ordered avoided as impairing the claimed exemption under the § 522(f) calculus on the assumption the exemption is $626,400.

Two pending adversary proceedings seek to except debts from discharge on counts under 11 U.S.C. §§ 523(a)(2) and (a)(4).

Meanwhile, the debtor filed the instant motion to compel abandonment of his exempt property pursuant to § 554(b) as being

---

[1] Cal. Code Civ. Pro. § 704.730 provides:

    (a) The amount of the homestead exemption is the greater of the following:
        (1) The countywide median sale price for a single-family home in the calendar year prior to the calendar year in which the judgment debtor claims the exemption, not to exceed six hundred thousand dollars ($600,000).
        (2) Three hundred thousand dollars ($300,000).
    (b) The amounts specified in this section shall adjust annually for inflation, beginning on January 1, 2022, based on the change in the annual California Consumer Price Index for All Urban Consumers for the prior fiscal year, published by the Department of Industrial Relations.

Cal. Code Civ. Pro. § 704.730 (2021). The 2022 adjusted exemption range is $312,200 to $626,400; in 2023, $339,196 to $678,391.

of inconsequential value and benefit to the estate. He reasons that more than 30 days have transpired since the last amendment to Schedule C and that no objection to his claim of exemption was filed within the deadline prescribed by Rule 4003(b)(1).

## Jurisdiction

Jurisdiction is founded on 28 U.S.C. § 1334(a). A motion to compel abandonment of property of the estate is a core proceeding. 28 U.S.C. § 157(b)(2)(A).

## Analysis

The fly in the ointment is 11 U.S.C. § 522(q)(1)(B)(ii), which preempts and caps California's recently-increased homestead exemption at $189,050 for debtors with debt arising from "fraud, deceit, or manipulation while acting in a fiduciary capacity."

The issue is not peculiar to California, which measures its maximum exemption by "countywide median sale price for a single-family home in the calendar year prior to the calendar year." The State of Washington has recently-enacted a similar homestead exemption measured by the "county median sale price of a single-family home in the preceding calendar year," which could exceed the exemption cap. Rev. Code Wash. § 6.13.030 (2021).

Paucity of precedent regarding a phenomenon migrating into the Ninth Circuit warrants more extensive analysis than is usual.

### I

### The Statutory Context

The 2005 Amendments to the Bankruptcy Code, commonly known

as BAPCPA, included a package that included three new subsections to § 522 in order to address perceived abuses of exemptions.

By these amendments Congress exercised its Constitutional authority under the Bankruptcy Clause at Article I, Section 8, to preempt state-law exemptions with which it had not previously interfered. U.S. Const. Art. 1, § 8.

### A
### Exemption Planning

The first provision, § 522(o),[2] is a quasi fraudulent transfer provision addressed to abusive exemption planning transfers infected by actual intent to hinder, delay, or defraud creditors made within the 10 years preceding bankruptcy. The reduction of an exemption on account of a § 522(o) violation turns on actual intent and does not require that the debtor have relocated from another state. 11 U.S.C. § 522(o).

---

[2] Section 522(o) provides:

(o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value on an interest in —
   (1) real or personal property that the debtor or a dependent of the debtor uses as a residence;
   (2) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;
   (3) a burial plot for the debtor or a dependent of the debtor; or
   (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;
shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

11 U.S.C. § 522(o).

4

B

Bankruptcy Tourism

The second added subsection, § 522(p),[3] addressed abusive bankruptcy tourism to remedy the so-called "mansion loophole" that figured prominently in legislative debate.

It had become regarded as a notorious abuse that individuals facing large liabilities would relocate from low-exemption states to high-exemption states, such as Florida or Texas, and purchase mansions as a homestead before filing a bankruptcy case.

New subsection § 522(p) prescribes an inflation-adjusted exemption cap (presently $189,050) for interests in property

---

[3]Section 522(p) provides:

   (p)(1) Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate [now $189,050] in value in —
      (A) real or personal property that the debtor or a dependent of the debtor uses as a residence;
      (B) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;
      (C) a burial plot for the debtor or a dependent of the debtor; or
      (D) real or personal property that the debtor or a dependent of the debtor claims as a homestead;
   (2)(A) The limitation under paragraph (1) shall not apply to an exemption claimed under subsection (b)(3)(A) by a family farmer for the principal residence of such farmer.
      (B) For purposes of paragraph (1), any amount of such interest does not include any interest transferred from a debtor's previous principal residence (which was acquired prior to the beginning of such 1215-day period) into the debtor's current principal residence, if the debtor's previous and current residences are located in the same State.

11 U.S.C. § 522(p).

"acquired" within 1215 days preceding the bankruptcy case filing by persons who move from another state. 11 U.S.C. § 522(p).

This provision complemented a revision of § 522(b)(3) that saddles those who change domicile with the exemptions of their former domicile for up to two years. 11 U.S.C. § 522(b)(3)(A).

### C
### Abusive Exemption of Debt Arising From Misconduct

The third provision, § 522(q),[4] prescribes the same $189,050

---

[4]Section 522(q) provides:

   (q)(1) As a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of an interest in property described in subparagraph (A), (B), (C), and (D) of subsection (p)(1), which exceeds in the aggregate [now $189,050] if —
      (A) the court determines, after notice and a hearing, that the debtor has been convicted of a felony (as defined in section 3156 of title 18), which under the circumstances, demonstrates that the filing of the case was an abuse of the provisions of this title; or
      (B) the debtor owes a debt arising from —
         (i) any violation of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934), any State securities law, or any regulation or order issued under Federal securities laws or State securities laws;
         (ii) fraud, deceit or manipulation in a fiduciary capacity or in connection with the purchase and sale of any security registered under section 12 or 15(d) of the Securities Exchange Act of 1934 or under section 6 of the Securities Act of 1933;
         (iii) any civil remedy under section 1964 of title 18; or
         (iv) any criminal act, intentional tort, or willful or reckless misconduct that caused serious physical injury or death to another individual in the preceding 5 years.
   (2) Paragraph (1) shall not apply to the extent the amount of an interest in property described in subparagraphs (A), (B), (C) and (D) of subsection (p)(1) is reasonably necessary for the support of the debtor and any dependent of the debtor.

exemption cap as § 522(p), but does not depend on when interests in property are acquired and applies to everyone, not just persons relocating from another state. It is designed to close the "mansion loophole" for persons who commit specified forms of misconduct and features a savings clause to ameliorate harsh consequences for debtors and dependents. 11 U.S.C. § 522(q).[5]

## II
### Early Debates Regarding Construction

The background and legislative history of the 2005 additions to § 522 came into focus in the course of the first substantial controversy regarding their terms.

The phrase "as a result of electing under subsection (b)(3)(A) to exempt property under State or local law" that is in §§ 522(p) and (q) stirred debate about whether Congress had succeeded in closing the dysfunctional "mansion loophole."

One school invoked "plain meaning" to contend that "result of electing" meant that the cap on exemptions could not apply in states that had exercised the § 522(b)(2) authority to prohibit use of the § 522(d) federal exemptions.[6] In re McNabb, 326 B.R.

---

11 U.S.C. § 522(q).

[5] The House Judiciary Committee Report on BAPCPA and § 522(q)(1)(B)(ii) & (iii) noted "concerns that former Enron Chairman Kenneth Lay would be entitled to an unlimited homestead exemption in his native Texas should he file for Bankruptcy." H.R. REP. No. 109-31(1) at 595 (2005).

[6] A state's power to "opt-out" of the federal bankruptcy exemptions at § 522(d) is at § 522(b)(2):

> (b)(2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that

7

785 (Bankr. D. Ariz. 2005). It reasoned that no "election" occurs when there is only one possible exemption choice. However, the paradigm "mansion loophole" example is in such a jurisdiction.

The other school contended the cap applies in all states. To hold otherwise, based on the history of the "mansion loophole," would defeat the plain purpose of the exemption cap. E.g., In re Virissimo, 322 B.R. 201, 207 (Bankr. D. Nev. 2005).

In 2006, Judge Markell, rebutting McNabb, detailed the history of the "mansion loophole" abuse in the context of rules of statutory construction to conclude that the phrase "result of electing" may have been inept draftsmanship but could not be construed so as to defeat Congress' avowed purpose of closing the loophole. In re Kane, 336 B.R. 477, 479-85 (Bankr. D. Nev. 2006).

The view stated in Kane gains support from recognition of fallacy in the McNabb reasoning in which one exemption "election" was overlooked. The key is the threshold provision in § 522(b)(1) that an individual debtor "may exempt" property from property of the estate.[7] Virissimo, 322 B.R. at 207. As the word "may" is permissive, not mandatory, it follows that every claim of exemption entails "electing" to exempt property.

---

      is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.

11 U.S.C. § 522(b)(2).

    [7]The first sentence of § 522(b)(1) provides:

    (b)(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or in the alternative, paragraph (3) of this subsection.

11 U.S.C. § 522(b)(1).

8

In short, the fallacy of false choice infects McNabb. One cannot ignore the election preliminary to every claim of exemption. There is always a § 522(b)(1) "election" to exempt or not exempt, regardless of whether the state has opted out of § 522(d) exemptions. Nor is the "no-exemption" election absurd; debtors may elect to forego exemptions for various reasons.

The weight of modern trial-court authority supports the Kane-Virissimo analysis.

The Bankruptcy Appellate Panel and at least one District Court in this circuit have approved the Kane-Virissimo view that § 522(p) and § 522(q) apply in all states. E.g., Caldwell v. Nelson (In re Caldwell), 545 B.R. 605, 609 (9th Cir. BAP 2016); Kane v. Zions Bancorporation, N.A., ___ F. Supp. 3d___, Bankr. L. Rep. ¶ 83,821, 2022 Westlaw 4591787, at *6-*8 (N.D. Cal. 9/29/22) (Orrick, D.J.), notice of appeal filed, 9th Cir. No. 22-16674.

This court agrees and holds that the exemption caps in § 522(p) and § 522(q) apply in California bankruptcy cases.

### III
### § 522(q) Misconduct Issues

Unlike the 522(p) 1215-day exemption cap, which has been the subject of cases involving timing issues and the meaning of "acquire," the terms of the § 522(q) exemption cap for bad acts have only occasionally been addressed in reported cases.

#### A
#### Cross-References in § 522(p) and § 522(q)

What is the effect of the cross-reference in § 522(q) to the

1215-day § 522(p) cap that applies to bankruptcy tourists?

The syntax of the two subsections reveals that the cross-references in § 522(q)(1) to paragraphs (A), (B), (C), and (D) of § 522(p)(1) operate merely to designate the property to which the permanent cap of § 522(q) applies. Specifically, the property affected by a § 522(q) cap is the same property that is subject to the § 522(p)(1) 1215-day temporary cap.

The cross-references do not, however, tether § 522(q) to 1215-day provision of § 522(p) in any other respect. The § 522(q) exemption cap applies to all homesteads wherever situated. To hold otherwise would invalidate and leave § 522(q) meaningless.

B

Uncertain Meanings of Misconduct

The bad acts that trigger the § 522(q)(1) permanent cap on exemptions are a hodge-podge of five little-explored categories:

> (1) abusive filing of a bankruptcy case after being convicted of a felony;
>
> (2) debt from any violation of federal or state securities laws and regulations or orders issued under them;
>
> (3) debt from fraud, deceit, or manipulation in a fiduciary capacity or in connection with the purchase or sale of any security register under specified sections of the Securities Exchange Act of 1934 or the Securities Act of 1933;
>
> (4) debt from any civil remedy for racketeering; and
>
> (5) debt from any criminal act, intentional tort, or willful or reckless misconduct that caused serious physical injury or death to another individual within the preceding five years.

11 U.S.C. § 522(q)(1).

There is a savings clause at § 522(q)(2) permitting the § 522(q)(1) exemption cap to be exceeded to the extent

10

"reasonably necessary for the support of the debtor and any dependent of the debtor."[8]

### 1

There is authority under § 522(q)(1)(A) construing what "under the circumstances" constitutes an "abuse" of title 11 following a felony conviction. In re Cotton, 647 B.R. 767 (Bankr. W.D. Wash. 2022) (Washington exemption).

### 2

Violation of securities laws for purposes of § 522(q)(1)(B)(i) has been addressed in a Texas decision. In re Bounds, 491 B.R. 440 (Bankr. W.D. Tex. 2013).

### 3

The § 522(q)(1)(B)(ii) clause regarding "fraud, deceit, and manipulation in a fiduciary capacity" was addressed in an Enron executive's bankruptcy. In re Presto, 376 B.R. 554, 586-601 (Bankr. S.D. Tex. 2007).

### 4

The § 522(q)(1)(B)(iii) clause regarding "any civil remedy

---

[8]Section 522(q)(2) provides:

> (q)(2) Paragraph (1) shall not apply to the extent the amount of an interest in property described in subparagraphs (A), (B), (C), and (D) of subsection (p)(1) is reasonably necessary for the support of the debtor and any dependent of the debtor.

11 U.S.C. § 522(q)(2).

under section 1964 of title 18," which relates to racketeering, does not yet appear in reported decisions.

### 5

The First Circuit construed the § 522(q)(1)(B)(iv) clause regarding "any criminal act, intentional tort, or willful or reckless misconduct that caused serious physical injury or death to another individual in the preceding 5 years." Larson v. Howell (In re Larson), 513 F.3d 325 (1st Cir. 2008), aff'g 340 B.R. 444 (Bankr. D. Mass 2006) (negligent homicide conviction).

### C
### § 522(q)(2) Savings Clause

The savings clause of § 522(q)(2) for sums exceeding the § 522(q)(1) cap regarding what is "reasonably necessary for the support of the debtor and any dependent of the debtor" has been construed in a few cases. E.g., Bounds, 491 B.R. at 452-54; Presto, 376 B.R. at 598-600.

### D
### Fraud, Deceit, or Manipulation in a Fiduciary Capacity

The provision of particular pertinence to this case is § 522(q)(1)(B)(ii) prescribing a $189,050 exemption cap if the debtor owes a debt "arising from" – "fraud, deceit or manipulation in a fiduciary capacity."

Whether the provision, which also is in § 548(e)(2)(B), encompasses the issues in the two pending adversary proceedings alleging causes of action under § 523(a)(2) and § 523(a)(4) is an

open question as to which this court expresses no view.

Key questions will need to be resolved in the usual adversary manner:

What constitutes the requisite "fraud"?

What constitutes the requisite "deceit"?

What constitutes the requisite "manipulation"?

What constitutes the requisite "fiduciary capacity"?

Does "in a fiduciary capacity" modify "fraud" or "deceit"?

Although similarities of language with § 523(a)(2) and § 523(a)(4) are intriguing, one would need to consider the implications of why Congress did not merely clone them.

Answers to those questions must await decisions made in the usual case-by-case adversary manner.

## IV

## Procedure and Burdens

Although the paucity of § 522(q) precedent regarding substantive provisions leaves much uncertain, it is possible to be more definite about procedure and burdens.

### A

### Deadline to Make § 522(q) Objections

Rule 4003(b)(3) permits an objection to exemption under § 522(q) to be made by any party in interest at any time before the case closes.[9]

---

[9]Rule 4003(b)(3) provides:

(b)(3) An objection to a claim of exemption based on § 522(q) shall be filed before the closing of the case. If

13

The expiration of the normal deadline under Rule 4003(b)(1) — usually 30 days after meeting of creditors or last amendment to claim of exemption[10] — does not affect the § 522(q) deadline.

In other words, open season on § 522(q) theories for limiting exemptions to the exemption cap does not expire before the case closes.

The prolonged opportunity to object under § 522(q) means that an order under § 554 authorizing or compelling abandonment cannot be trusted to be final before the case closes.[11] Until then, there is the risk that someone will surface with a § 522(q) objection. When there is pending litigation that alleges some trigger elements of § 522(q), the prudent course is for the court to decline to order a § 554 abandonment before the case closes.

Closure of the case, by operation of § 554(c), includes

---

>   an exemption is first claimed after a case is reopened, an
>   objection shall be filed before the reopened case is closed.

Fed. R. Bankr. P. 4003(b)(3).

[10]Rule 4003(b)(1) provides:

>   (b)(1) Except as provided in paragraphs (2) and (3), a
>   party in interest may file an objection to the list of
>   property claimed as exempt within 30 days after the meeting
>   of creditors held under § 341(a) is concluded or within 30
>   days after any amendment to the list or supplemental
>   schedules is filed, whichever is later. The court may, for
>   cause, extend the time for filing objections if, before the
>   time to object expires, a party in interest files a request
>   for an extension.

Fed. R. Bankr. P. 4003(b)(1).

[11]If it were to be determined that the $189,050 exemption cap applies, then it may be possible for the judgment lien creditors whose liens were avoided in this case on the premise a $626,400 exemption applies to ask the court to revisit the questions of avoiding the respective liens.

14

abandonment of all correctly scheduled property not otherwise administered. 11 U.S.C. § 554(c).[12]

B

Standing

Any party in interest has standing to make a § 522(q) objection to exemptions. Fed. R. Bankr. P. 4003(a)(1).

In addition to the plaintiffs in the pending adversary proceedings, the trustee may object, and any other party in interest could object.

One rationale for liberal standing is that the $189,050 exemption cap against a $626,400 exemption claim could make $437,350 available as property of the estate, which case could translate to a substantially increased dividend.

C

Burdens

Shifting burdens apply in objections to exemptions in California bankruptcy cases.

1

The applicable burden of proof for exemptions claimed under California law is allocated by California statute governing judgment enforcement.

---

[12] Trap for unwary: property of the estate that has <u>not</u> been scheduled remains property of the estate, essentially forever. 11 U.S.C. § 554(d); cf., In re Dunning Bros., 410 B.R. 877 (Bankr. E.D. Cal. 2009)(case reopened in 2009 to administer unscheduled property in case filed in 1936).

15

In general, the claimant of the exemption has the burden of proof of entitlement to a homestead exemption. Cal. Code Civ. Pro. § 703.580(b).[13]

The burden, however, is on the objector if the records of the county tax assessor reflect a property tax claim of homeowners exemption or disabled veterans exemption. Cal. Code Civ. P. § 704.780(a)(1).[14]

2

In the context of § 522(q), after it is established there is entitlement to a homestead exemption, an objector asserting the § 522(q) exemption cap has the burden to prove the predicate for capping the exemption. Here, that would entail proof of the "fraud, deceit, or manipulation in a fiduciary capacity" required by § 522(q)(1)(B)(ii).

---

[13]Cal. Code Civ. Pro. § 703.580(b) provides:

(b) At a hearing under this section, the exemption claimant has the burden of proof.

Cal. Code Civ. Pro. § 703.580(b).

[14]Cal. Code Civ. Pro. § 704.780(a)(1) provides:

(1) If the records of the county tax assessor indicate that there is a current homeowner's exemption or disabled veteran's exemption for the dwelling claimed by the judgment debtor or the judgment debtor's spouse, the judgment creditor has the burden of proof that the dwelling is not a homestead. If the records of the county tax assessor indicate that there is not a current homeowner's exemption or disabled veteran's exemption for the dwelling claimed by the judgment debtor or the judgment debtor's spouse, the burden of proof that the dwelling is a homestead is on the person who claims that the dwelling is a homestead.

Cal. Code Civ. Pro. § 704.780(a)(1).

16

3

Finally, the § 522(q)(2) safety valve permitting an upward adjustment of the cap for necessary support is in the nature of an affirmative defense.

If the cap is determined to apply, then the exemption claimant has the burden of persuasion and correlative risk of nonpersuasion on the question of the "amount reasonably necessary for the support of the debtor and any dependent of the debtor." 11 U.S.C. § 522(q)(2).

The record in this case is silent about whether the Placer County Tax Assessor's records reflect the debtor has claimed a homeowner's tax exemption or a disabled veteran's exemption.

4

The provision of Rule 4003(c) purporting to allocate the burden of proof to exemption objectors cannot trump California's statutory allocations of burdens for state law exemptions.

a

Rule 4003(c), to the extent it displaces state-law burdens with respect to exemptions provided by state law, offends the Bankruptcy Rules Enabling Act, which forbids rules that modify any substantive right. 28 U.S.C. § 2075.

The Supreme Court's 2000 ruling that bankruptcy does not alter the burden imposed by underlying substantive law clarified that burden of proof is substantive, not procedural. <u>Raleigh v. Ill. Dept. of Revenue</u>, 530 U.S. 15 (2000). Although the status of burden of proof as procedural or substantive may have been

uncertain before <u>Raleigh</u>, after 2000 the law is: "the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it." <u>Raleigh</u>, 530 U.S. at 21.

To the extent Rule 4003(c) modifies the burden of proof for exemptions claimed under state law, the rule violates the prohibition on modifying substantive rights. In other words, regardless of Rule 4003(c), state law exemptions control the burdens of proof governing state law exemptions. <u>Anderson v. Nolan (In re Nolan)</u>, 2022 Westlaw 327927, *2 (9th Cir. 2022), <u>aff'g</u> 2021 Westlaw 528679, *3, (C.D. Cal. 2021), <u>aff'g</u> 618 B.R. 860 (Bankr. C.D. Cal. 2020).

When in 2005 Congress imposed exemption caps on state-law exemptions, it did not modify basic proof rules regarding state-law exemptions.

b

After <u>Raleigh</u> and the recognition of the infirmity of Rule 4003(c), California state-law exemptions have been construed by bankruptcy courts as subject to the burdens of proof prescribed by state law, which generally place the burden on the person claiming the exemption. E.g., <u>In re Pashenee</u>, 531 B.R. 834, 837 (Bankr. E.D. Cal. 2015); <u>In re Tallerico</u>, 532 B.R. 774, 780-81 (Bankr. E.D. Cal. 2015). Accord, e.g., <u>Bhangoo v. Engs Comm. Fin. Co. (In re Bhangoo)</u>, 634 B.R. 80, 85 (9th Cir. BAP 2021); <u>Diaz v. Kosmala (In re Diaz)</u>, 547 B.R. 329, 337 (9th Cir. BAP 2016), <u>cited with approval Nolan</u>, <u>supra</u> (9th Cir. 2022).

## Conclusion

The debtor's motion to compel abandonment of his homestead property pursuant to § 554(b) is DENIED as premature because the deadline under Rule 4003(b)(3) for any party in interest to object that the $189,050 § 522(q) exemption cap applies to limit the debtor's $626,400 exemption does not expire until the case closes. Pending litigation implicates § 522(q)(1)(B)(ii). If the exemption cap does apply, then the subject property could be of consequential value and benefit to the estate.

Dated: March 23, 2023

_____
United States Bankruptcy Judge